1

2

3

4                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
5

6    DANA SYRIA, individually and on
     behalf of all others similarly situated,
7
                        Plaintiff,
8                                                        C17-1139 TSZ
            v.
                                                        ORDER
9    ALLIANCEONE RECEIVABLES
     MANAGEMENT, INC., et al.,
10
                        Defendants.
11

12          THIS MATTER comes before the Court on a motion for summary judgment

13   brought by defendant AllianceOne Receivables Management, Inc. ("AllianceOne"),

14   docket no. 69.  Having reviewed all papers filed in support of, and in opposition to, the

15   motion, the Court enters the following order.

16   **Background**

17          Pursuant to RCW 3.02.045(1), the King County District Court entered into a

18   contract with AllianceOne pursuant to which AllianceOne would collect for the King

19   County District Court unpaid legal financial obligations ("LFOs") imposed in connection

20   with criminal sentences.  *See* Ex. 2 to Bolden Decl. (docket no. 54-2); *see also* 1st Am.

21   Compl. at ¶¶ 3.1 & 3.4 (docket no. 1-1).  The contract between the King County District

22   Court and AllianceOne was in effect from August 1, 2009, through July 31, 2010, and

23   then automatically renewed for one-year terms thereafter, until it was terminated.  *See*

     ORDER - 1

Ex. 2 to Bolden Decl. (docket no. 54-2).[1]  Under the agreement, AllianceOne absorbed all costs in processing credit cards, and it could charge and retain a "nominal convenience fee" for credit card transactions.  Ex. 4 to Bolden Decl. (docket no. 54-4).  AllianceOne's credit card fee is the subject of this litigation.

During the relevant period, AllianceOne accepted payment via cash, check, or money order without charging a transaction fee.  _See_ Silvernale Decl. at ¶ 2 (docket no. 10-24).  AllianceOne was not required to permit payment by credit card, but it did so as a convenience to debtors.  _See id._  In contrast to cash payments, which require a debtor to travel to a courthouse pay station, credit card transactions could be completed online or by phone.  _See id._ at ¶¶ 2 & 3.  Moreover, unlike payments by check, credit card transactions were not subject to any waiting period, and were immediately posted in the same manner as cash.  _Id._ at ¶ 2; _see_ Ex. 4 to Bolden Decl. (docket no. 54-4) (a 14-day holdover was placed on personal checks, after which time AllianceOne would "absorb all checks returned" for insufficient funds or otherwise).  Thus, by using a credit card, a debtor could wait until the due date to make payment without incurring any late penalties.  _See_ Silvernale Decl. at ¶ 2 (docket no. 10-24).

---

[1] Under the terms of the contract, AllianceOne would forward to the King County District Court all interest collected on LFOs.  _See_ Ex. 4 to Bolden Decl. (docket no. 54-4).  Moreover, in accordance with RCW 19.16.500(1)(b), which permits a governmental entity using a collection agency to add to the outstanding debt a reasonable collection-agency fee, to be paid by the debtor, the agreement between the King County District Court and AllianceOne authorized AllianceOne to charge another 17.1% of the principal amount of LFOs and to retain such amount, which would be 14.6% of the total collected from the debtor.  _Id._  For example, if AllianceOne was assigned to collect $100.00 in LFOs, AllianceOne would add $17.10 (17.1%), resulting in a sum of $117.10 to be paid by the debtor.  _Id._  Of that $117.10, $100.00 would be remitted to the King County District Court, and $17.10 (or 14.6% of $117.10) would be retained by AllianceOne.  _Id._

In written communications with debtors, AllianceOne advised that a convenience fee would be charged for each credit card transaction. *See* Ex. 4 to Bolden Decl. (docket no. 54-4). The convenience fee was initially $5, but increased to $10 during the timeframe at issue in this litigation. *See id.*; Brimer Decl. at ¶ 2.A (docket no. 9-17). In addition, when debtors called or went online to make credit card payments, they were told about the associated transaction fee, as well as the fee-free payment options, namely walk-in cash payments or payments by check via mail. Silvernale Decl. at ¶ 3 (docket no. 10-24).

On July 22, 2010, plaintiff Dana Syria pleaded guilty to a misdemeanor, and the King County District Court imposed LFOs in the amount of $1,720.50. 1st Am. Compl. at ¶ 3.3 (docket no. 1-1). Between November 2011 and October 2012, plaintiff made four payments to AllianceOne via credit card in connection with the LFOs imposed by the King County District Court, and each time incurred a $10 charge for using a credit card. *Id.* at ¶ 3.5. Plaintiff alleges that AllianceOne's assessment of credit card fees was prohibited by Washington's Collection Agency Act ("WCAA") and therefore constituted an unfair or deceptive trade practice in violation of Washington's Consumer Protection Act ("CPA"). *Id.* at ¶ 5.2. Plaintiff asserts her CPA claim on behalf of a class of all persons who paid AllianceOne a transaction fee for use of a credit or debit card to pay down an alleged debt. *Id.* at ¶ 4.4(i).[2] AllianceOne now moves for summary judgment, seeking dismissal of plaintiff's CPA claim.

---

[2] In July 2017, before this case was removed from King County Superior Court, plaintiff's motion for class certification was granted contingent on plaintiff's counsel's submission of proposed findings of fact and conclusions of law. Order (docket no. 14-18). The King County Superior Court's order did not

**Discussion**

**A.   Standard for Summary Judgment**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party on matters as to which such party will bear the burden of proof at trial, summary judgment is warranted.  *See Matsushita Elec. Indus.  Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

**B.   Washington's Consumer Protection Act**

To establish a violation of the CPA, a private plaintiff must prove that:  (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986).  In its motion for summary judgment, AllianceOne contends that plaintiff cannot establish any of the five elements of a CPA claim.  The Court concludes, as a matter of law, that plaintiff has not met her burden, with respect to the first element,

---

define the class being certified, *see id.*, and the state court did not receive or enter any findings of fact or conclusions of law in support of its ruling before the matter was removed.  Because the condition precedent to the certification of a class was never met, the King County Superior Court's order is without legal effect, and no class has been certified.

of showing AllianceOne engaged in an unfair or deceptive act or practice by imposing the credit card transaction fee at issue and, as a result, the Court does not reach the other arguments raised by AllianceOne.

Whether conduct constitutes an unfair or deceptive trade practice within the meaning of the CPA constitutes a question of law. *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 114, 22 P.3d 818 (2001). An act or practice can be deemed unfair or deceptive in one of two ways: (i) when it violates a statute in which the Washington Legislature has declared such violation to be a "per se" unfair or deceptive trade practice, *Hangman Ridge*, 105 Wn.2d at 786; or (ii) when it is either unfair or deceptive under the criteria developed in Washington jurisprudence, *see Rush v. Blackburn*, 190 Wn. App. 945, 962-63, 361 P.3d 217 (2015) (outlining a three-part test for "unfair" acts[3] and a separate standard for "deceptive" practices[4]). Plaintiff has not satisfied either test for an unfair or deceptive trade practice.

Certain violations of the WCAA are "per se" unfair acts or practices for purposes of the CPA, including commission by a licensed collection agency of an act or practice prohibited by RCW 19.16.250. *See* RCW 19.16.440. Plaintiff alleges that AllianceOne is a collection agency within the meaning of the WCAA and that it violated one of the

---

[3] A trade practice can be considered "unfair" if (i) it offends public policy, although not the letter of the law, or falls within "the penumbra of some common-law, statutory, or other established concept of unfairness"; (ii) it is "immoral, unethical, oppressive, or unscrupulous"; and/or (iii) it causes substantial injury to consumers, competitors, or other businesses. *Rush*, 190 Wn. App. at 962-63. An act can be "unfair" without being "deceptive." *Id.* at 963.

[4] Conduct is "deceptive" if it involves a representation, omission, or practice that is "likely to mislead" a reasonable person and has "the capacity to deceive a substantial portion of the public." *Rush*, 190 Wn. App. at 963.

provisions of RCW 19.16.250, namely subsection (21), which precludes a collection agency from collecting or attempting to collect "in addition to the principal amount of a *claim* any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs." RCW 19.16.250(21) (emphasis added). AllianceOne responds that this language did not apply to its collection activities because LFOs are not a "claim" as defined by the WCAA. The Court agrees. Under the WCAA, a "claim" is an "obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied." RCW 19.16.100(2). LFOs do not arise out of an agreement or contract, but are imposed by a court in connection with criminal sentencing.[5]

Moreover, even if the WCAA section at issue governs, the Court concludes, as a matter of law, that the statute permitted AllianceOne to impose credit card transaction fees as part of the "collection costs[6] or handling fees expressly authorized by statute." RCW 19.16.250(21). Courts of limited jurisdiction, like the King County District Court, are allowed to use credit cards and/or debit cards to collect "unpaid penalties, fines, costs, assessments, and forfeitures," to enter into agreements relating to debt collection that

---

[5] Plaintiff argues that LFOs constitute a "claim" because (i) AllianceOne contracted with the King County District Court to collect them and/or (ii) plaintiff implicitly agreed to make payments on them. Plaintiff's contention lacks merit. The WCAA speaks in terms of the "principal amount of a claim," and nothing in AllianceOne's agreement with King County District Court establishes the principal amount of any LFOs. Plaintiff's suggestion that she somehow consented to pay LFOs ignores the exact reason AllianceOne was asked to collect on them, *i.e.*, plaintiff's failure to timely satisfy her outstanding financial obligations. *See* 1st Am. Compl. at ¶ 3.4 (docket no. 1-1).

[6] *See* RCW 19.16.500(1)(b)&(4) (the debts owed to governmental entities may include collection agency fees, which are per se "reasonable" if they are (i) $100 or less (even if they are 100% of the outstanding debt), (ii) 50% or less of the first $100,000, and/or (iii) 35% or less of the amount of the unpaid debt exceeding $100,000).

ORDER - 6

"specify conditions, remuneration for services, and *other charges deemed appropriate*,"

and to assess as court costs the amounts paid to collection agencies or financial

institutions. RCW 3.02.045(2)&(5) (emphasis added). Credit card transaction fees fall

within the "other charges deemed appropriate" that may be included in LFOs, and they

were part of the explicit terms of the agreement between the King County District Court

and AllianceOne. AllianceOne did not violate RCW 19.16.250(21) by imposing the $10

credit card fees at issue.

In addition to not qualifying as a "per se" unfair or deceptive trade practice, the

collection of credit card transaction fees does not satisfy the jurisprudential standards for

unfair or deceptive acts or practices. Plaintiff was not forced to use a credit card to pay

her LFOs, but instead chose to do so despite being advised of the transaction fee and of

the other fee-free options for making payment. *See* Ex. 1 to Rosenberg Decl. (docket

no. 70-1) (plaintiff's counsel conceded during a hearing before the King County Superior

Court that plaintiff was given the option of paying without a transaction fee and that she

was not compelled to pay by credit card). Nothing about these circumstances was unfair

or deceptive. Although plaintiff objects to the amount of the credit card transaction fee,

she has presented no evidence to support her allegation that the amount bore no rational

relationship to the costs AllianceOne incurred in connection with such transactions,

including labor and equipment expenses and overhead associated with telephone and

website operations, as well as bank charges. In sum, plaintiff has not shown that the

imposition of credit card transaction fees in any way offended public policy, was

"immoral, unethical, oppressive, or unscrupulous," caused substantial injury to

consumers, competitors, or other businesses, or involved a representation, omission, or practice that was "likely to mislead" a reasonable person and had "the capacity to deceive a substantial portion of the public." *See* *Rush*, 190 Wn. App. at 962-63. Because plaintiff cannot establish the first element of a CPA claim, her CPA claim against AllianceOne must be dismissed.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Defendant AllianceOne Receivables Management, Inc.'s motion for summary judgment, docket no. 69, is GRANTED, and plaintiff Dana Syria's first claim for violation of Washington's Consumer Protection Act is DISMISSED with prejudice;

(2)    In light of the Court's ruling, AllianceOne's motions to decertify the class, docket no. 53, and to bifurcate and stay the class claims, docket no. 55, as well as plaintiff's motion to certify questions to the Washington Supreme Court, docket no. 79, are STRICKEN;

(3)    The hearing set for August 2, 2018, at 9:00 a.m., is STRICKEN;

(4)    Plaintiff's claims against defendant Transworld Systems Inc. ("TSI") remain pending, and the Court will separately address plaintiff's motion for preliminary approval of a class action settlement with TSI, docket no. 82;

(5)    No just reason for delay existing, the Clerk is DIRECTED to enter partial judgment in favor of AllianceOne and against plaintiff consistent with this Order and pursuant to Federal Rule of Civil Procedure 54(b); and

1        (6)     The Clerk is further DIRECTED to send a copy of this Order and the partial

2  judgment in favor of AllianceOne to all counsel of record.

3        IT IS SO ORDERED.

4        Dated this 18th day of July, 2018.

Thomas S. Zilly
United States District Judge